# IN THE SUPREME COURT OF TEXAS

═══════════

No. 12-1039

═══════════

LUBBOCK COUNTY WATER CONTROL AND IMPROVEMENT DISTRICT NO. 1 AND TOMMY FISHER, IN HIS OFFICIAL CAPACITY AS PRESIDENT OF THE BOARD OF DIRECTORS OF THE LUBBOCK COUNTY WATER CONTROL AND IMPROVEMENT DISTRICT NO. 1, PETITIONERS,

v.

CHURCH & AKIN, L.L.C., RESPONDENT

═══════════════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SEVENTH DISTRICT OF TEXAS

═══════════════════════════════════════════════════

JUSTICE WILLETT, dissenting.

For decades the Lubbock Water District operated a marina at Buffalo Springs Lake. In 2007, the District leased the marina property to Church & Akin. The lease agreement specified that the property could only be used as a marina, and the lease required that "the marina" issue tickets to visitors for admission to the lake. When Church & Akin declined the District's request to increase the marina's hours of operation, the District terminated the lease before the end of the fixed term. Church & Akin sued for breach of contract. The Court holds the District enjoys governmental immunity because the lease agreement does not contain a contract for services to the District. I respectfully dissent because I believe the lease agreement obligates Church & Akin to operate a marina as a service to the District.

## I. Waiver of Governmental Immunity

The Legislature has waived local governments' immunity for breach of contract claims arising from "a written contract stating the essential terms of [an] agreement for providing goods or services to [a] local governmental entity."[1] A contract contains its "essential terms" when it outlines the material terms necessary to make a contract enforceable.[2] And "services" is a term "broad enough to encompass a wide array of activities."[3]

"[W]e construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served."[4] Each portion of a contract must be read in light of its other operative parts. "We consider the entire writing to harmonize and effectuate all provisions such that none are rendered meaningless."[5] While contract interpretation does involve close scrutiny of its individual components, "we must evaluate the overall agreement to determine what purposes the parties had in mind at the time they signed the [agreement]."[6] When seeking to determine the intent of the parties, we also look to the text "as understood in light of the facts and circumstances surrounding

---

[1] TEX. LOCAL GOV'T CODE § 271.151(2)(A).

[2] *See Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex. 2010) (holding that an agreement satisfied the "essential terms" requirement because it "clearly outlined" "[t]he names of the parties, property at issue, and basic obligations").

[3] *Id.* at 839.

[4] *FPL Energy, LLC v. TXU Portfolio Mgmt. Co.*, 426 S.W.3d 59, 63 (Tex. 2014) (internal quotation marks omitted).

[5] *Id.*

[6] *Kirby Lake*, 320 S.W.3d at 841.

the contract's execution."[7] We must interpret contracts as entire instruments, with an eye toward the practical intent of the parties and the surrounding circumstances, and we must give meaning and harmony to the contract's various parts. I believe the Court has deviated from this well-worn course in its analysis of the District's lease agreement.

## II. Interpretation of the Lease Agreement

Applying the above principles, I would hold that the District has waived its immunity by contracting for the obligatory operation of a marina as a service to the District.

A.     <u>The lease agreement requires Church & Akin to operate a marina</u>.

The Court concludes that any benefit that accrues to the District from Church & Akin's operation of a marina is too indirect to constitute a contract for services to the District because the lease agreement did not *require* operation of a marina. I agree that contingent terms in a contract can be too attenuated to trigger waiver of governmental immunity. But I believe the lease agreement did not simply *commend* marina operation—it *commanded* it.

The lease agreement contains the following language under the "USE" provision of the contract:

> The premises are leased to be used only as a Lake marina, restaurant, gasoline and sundry sales and as a recreational facility. Lessee agrees to restrict their use to such purposes, and not to use, or to permit the use of, the premises for any other purpose without first obtaining the consent in writing of Lessor or Lessor's authorized agent. Lessor agrees not to unreasonably withhold consent.

---

[7] *Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011).

3

The Court says that this "marina only" provision does not *require* Church & Akin to do anything—it is only a restriction on use. Thus, Church & Akin would not be violating the provision if it did *nothing* with the property.

But another clause in the "USE" section indicates that Church & Akin cannot just abandon any use of the premises. The ticketing clause in the "USE" section of the lease says:

> The marina will issue catering tickets that will be redeemed at the gate for admittance to the lake. These tickets will be redeemed by the marina at the price of $1.00 each. They will only be available to persons coming into the marina.

The ticketing clause requires Church & Akin to use the premises. In mandatory language, the clause demands that Church & Akin *will* issue the tickets. In other words, Church & Akin cannot, as the Court claims, do *nothing* with the property given the ticketing clause's requirement that Church & Akin issue catering tickets. And if it uses the property at all, Church & Akin triggers the "marina only" clause, thus requiring operation of a marina, a restaurant, a retail and gas store, and a recreational facility. Thus, the ticketing clause and the "marina only" clause lead to this inexorable syllogism:

> If Church & Akin decides to actually use the premises, it must operate a marina.

> Church & Akin must use the premises to issue tickets for admission to the lake.

> Therefore, Church & Akin must operate a marina.

Harmonizing these two clauses, as we must, I would hold that they invariably lead to the conclusion that Church & Akin was obligated to operate a marina.

Also, the ticketing clause seems to take for granted that Church & Akin will operate a marina because it states that "the marina" will issue and redeem the tickets. The Court disregards this

4

necessary implication by deciding that the ticketing clause is a benefit to Church & Akin rather than a service that Church & Akin provides to the Water District. This reading of the contract flouts the wording of the contract, which states the marina *will* provide the ticketing service. In this context, "will," although it has many possible meanings depending on context, here indicates a mandatory requirement.[8] The Court points out that "will" can also indicate a statement of intent. But the phrase "will issue catering tickets" is situated in a contract in which parties lay out their respective duties and rights. In that context, "will issue catering tickets" establishes a duty, not a statement of intent. To read this as a statement of mere intent or plan makes the phrase at worst gratuitous and at best a very roundabout and awkward way of stating that Church & Akin is *allowed* to issue and redeem catering tickets. Neither is the most natural reading of the contract. If the contract was not establishing a duty but simply recognizing that the catering tickets are allowed and intended, language like "may" or "will be allowed to" issue catering tickets should be expected. And we should avoid readings that turn contract language into gratuitous surplusage. I believe the phrase "will issue catering tickets" reads most naturally as an obligatory act. It strains language and logic to construe a binding obligation ("the marina *will* issue catering tickets") as nothing more than a possible benefit to the bound party.

Moreover, the Court's analysis strips the language in the "USE" provision of independent meaning. The Court says "to be used only as a Lake marina" is just a restriction on use. But that reading renders meaningless the clause that immediately follows. After stating that the property is

---

[8] *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2617 (3rd ed. 1961) ("will" may be "used to express a command, exhortation, or injunction").

5

"to be used only as a Lake marina, restaurant," etc., the agreement says: "Lessee agrees to restrict their use to such purposes, and not to use, or to permit the use of, the premises for any other purpose . . . ." We can only give independent meaning to both clauses by reading the first clause as a mandated use, and the second as a restricted use. Under the Court's reading, these two clauses mean the exact same thing.

The headings and structure of the lease agreement also indicate that the District contracted for a marina with other attendant uses. The "marina only" provision falls under the "USE" section in the lease. Immediately following the "USE" section is a section titled "PROHIBITIONS ON USE." Under the Court's reading, the "USE" section contains *only* a prohibition on use. It seems odd to read the "USE" section as nothing more than a restriction on use, since it is so clearly separated from the "PROHIBITIONS ON USE" section. I would give some weight to the structure and headings of the agreement that provide further support for the conclusion that Church & Akin was obligated to operate a marina.

Even if Church & Akin need not operate a marina, it must at the very least provide a ticketing service. The Court worries that the ticket provision does not provide the essential terms of the contract. But a contract satisfies this requirement where it outlines the parties, subject matter, and basic obligations.[9] The ticketing clause meets this low threshold. It tells Church & Akin everything it needs to know—what is to be provided, for how much, and to whom. I do not see how Church & Akin could be confused about its responsibility under this clause. The Court argues that the clause

---

[9] *See Kirby Lake*, 320 S.W.3d at 838.

does not supply essential terms because it does not tell us the price at which the tickets should be sold to the public or the quantity. I disagree. We have held that "[w]here the parties have done everything else necessary to make a binding agreement for the sale of goods or services, their failure to specify the price does not leave the contract so incomplete that it cannot be enforced."[10] If the price for a sale or service between the parties need not be stipulated, then surely the price of an ancillary transaction between a contracting party and the third-party visitors to the lake is not necessary to create an enforceable contract either. And as for quantity, the clause can be reasonably read as requiring the marina to provide ticketing services to all visitors to the lake. But even so, enforceable contracts such as output or requirement contracts regularly do not stipulate quantity. Thus, the Court's concerns regarding price and quantity are unfounded.

As with any other contract, we should also take into consideration the surrounding circumstances at the time of contracting.[11] The District had been using this property as a marina for decades. A practical reading sensitive to context and circumstance confirms that these parties never envisioned the possibility that Church & Akin could be allowed to let a massive recreational area sit fallow, while at the same time carrying out its contractual duties to prevent permissive waste, maintain the premises in "as good" condition, make necessary repairs, prevent nuisances, and purchase property and liability insurance for "all activities." The Court's wooden approach to language stands in uneasy opposition to other portions of the agreement, the circumstances

---

[10] *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (quoting *Bendalin v. Delgado*, 406 S.W.2d 897, 900 (Tex. 1966)).

[11] *Houston Exploration Co.*, 352 S.W.3d at 469.

7

surrounding the contract, and our "practical" and "utilitarian" approach to contract interpretation. Church & Akin had a contractual obligation to operate a marina, and, at the very least, provide a ticketing service for admission to the lake.

      B.      <u>The services required by the lease are services to the District</u>.

I would also conclude that these obligatory services are services *to* the District. We have held that construction of public infrastructure by third-party contractors constitutes a service *to* the contracting authority (even though the public enjoys the benefits of the infrastructure).[12] Just as a third-party contractor who builds roads or bridges primarily for the public thereby provides a service to the governing authority, Church & Akin provides a service to the District by operating the marina. After all, Church & Akin took over a function that the District would have otherwise performed. The District had operated a marina on the property for many years, and considered those operations to be an important part of its service to the public. Further, the specific ticketing service, while small, is also a direct service to the District because selling the tickets assisted the District in managing the flow of visitors to the lake.

The Court says this case would be different if Church & Akin were not a lessee and had just contracted to operate the marina. But surely Church & Akin's status as a tenant does not determine whether its use of that property is a service *to* the District. The more accurate version of the analogy posited by the Court[13] is that of a local government entity leasing a pre-existing road to a construction company and including a requirement that the lessee repair potholes. The fact that the

---

[12] *See Kirby Lake*, 320 S.W.3d at 839.

[13] ___ S.W.3d ___.

8

pothole repair clause is part of the lease agreement does not change the nature of the service being provided. Nor should it. I worry that the Court's decision paves the way for local governments to avoid immunity waivers. All they need do now is turn the service provider into a lessee. Not only is this result problematic, but the statutory language does not support a distinction that relies on the label we apply to the contracting party. Thus, I reject the Court's argument that Church & Akin's tenancy changes the analysis of whether operating the marina is a service to the District.

*　　*　　*

Church & Akin was obligated under the lease agreement to operate a marina, restaurant, retail and gas store, and recreational facility. Church & Akin also had a duty to provide ticketing services. These are services to the District. I would therefore conclude that the District does not enjoy immunity. Because the Court holds otherwise, I respectfully dissent.

_____
Don R. Willett
Justice

**OPINION DELIVERED:** July 3, 2014

9